# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                                Plaintiff,

v.

VLADIMIR SONIN and
NATALYA SONINA,

                                Defendants,

JOURNAL SENTINEL, INC.,

                                Movant.

Case No. 15-CR-116-JPS

ORDER

        This case comes before the Court on the Journal Sentinel, Inc.'s ("Journal Sentinel") motion to intervene filed on behalf of one of its reporters. The Journal Sentinel objects to the Court sealing a portion of the formal sentencing hearings scheduled for defendants' Vladimir Sonin and Natalya Sonina. (Docket #69). The Journal Sentinel also requests that the Court unseal certain documents related to the sentencing hearings which the Court permitted to be filed under seal. (Docket #69 at 1). Both defendants oppose the Journal Sentinel's motion, and the government takes no position. (Docket #70, #74, #76).[1] For the reasons detailed below, the Court will grant the Journal Sentinel's request to intervene, but will deny its request to access the entire sentencing hearings and will further deny its request to unseal certain documents related to the sentencings.

_____

        [1]As discussed more thoroughly below, the government initially did not object to Mr. Sonin's request to seal, and then endorsed that request after the Journal Sentinel objected. However, in a letter soon thereafter filed with the Court, the government indicated it had misspoke, and instead chose not to take a position on the matter. (*See* Docket #70).

## 1. BACKGROUND

On November 18, 2015, defendant Vladimir Sonin ("Mr. Sonin") pled guilty to one count of mail fraud and one count of aggravated identity theft (*see* Docket #50) and, on November 24, 2016, defendant Natalya Sonina ("Ms. Sonina") also pled guilty to one count of mail fraud and one count of aggravated identity theft (*see* Docket #49).[2] The Court scheduled sentencing hearings for February 5, 2016, and February 18, 2016, respectively.

On February 5, 2016, the Court began its scheduled sentencing hearing for Mr. Sonin. (Transcript, Docket #69-1). Shortly after the hearing began, counsel for Mr. Sonin requested to seal the courtroom for a portion of the hearing to address one of the government's previously filed submissions. (Transcript at 7, Docket #69-1). The government posed no objection and, thus, the Court instructed the bailiff to close the courtroom to the public aside from court staff, counsel and the parties, including the case agent. (Transcript at 7, Docket #69-1).

At that time, a member of the press, Mr. Bruce Vielmetti, a reporter with the Journal Sentinel, objected to the sealing of the courtroom. (Transcript at 8, Docket #69-1). Specifically, Mr. Vielmetti requested that the Court adjourn the hearing and that he be permitted to contact legal counsel to further argue the Journal Sentinel's objection. (Transcript at 8, Docket #69-1). After some discussion and a brief recess, the Court found it best to adjourn the hearing and allow the Journal Sentinel to file a written memorandum detailing its objection. (Transcript at 8-9, Docket #69-1).

---

[2] The Court sentenced co-defendant Irina Tinney on February 5, 2016. (*See* Docket #61). Ms. Tinney's case is closed and is not relevant to the present motion before the Court.

On February 12, 2016, the Journal Sentinel filed a motion to allow public access to sentencing. (Docket #69). On February 18, 2016, Mr. Sonin filed an opposition. (Docket #74). On February 22, 2016, with the Court's permission, Ms. Sonina filed a response to the motion.[3] (Docket #76). The Journal Sentinel filed its reply, addressing both defendants' arguments, on February 22, 2016. (Docket #78). The motion is now fully briefed and ready for disposition.

2.      LEGAL STANDARDS

   2.1      First Amendment Protection

The Supreme Court recognized a First Amendment right to attend criminal trials in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (plurality opinion). "In guaranteeing freedoms such as those of speech and press," Chief Justice Burger reasoned, "the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees." *Id.* at 575. These freedoms become attenuated unless courts are prohibited "'from limiting the stock of information from which members of the public may draw.'" *Id.* at 575-76 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978)). In a concurring opinion, Justice Brennan emphasized that, while in practice the First Amendment serves to protect communication between individuals, "the First Amendment embodies more than a commitment to free expression and communicative interchange for their own sakes; it has a *structural* role to play in securing and

---

[3]Through informal discussions, the parties discovered the same issue would almost certainly arise at Ms. Sonina's sentencing hearing scheduled for February 18, 2016. *(*Docket #69 at 2 n.2; Docket #73). In order to preserve judicial resources, the Court postponed Ms. Sonina's sentencing hearing and allowed her to file a response to the Journal Sentinel's motion.

fostering our republican system of self-government." *Id.* at 586-87 (emphasis in original).

In subsequent cases, the Supreme Court further explained the right of access to criminal trials, most notably in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"). Drawing from *Richmond Newspapers* and its progeny, *Press-Enterprise II* extended the right of access beyond the trial itself and applied it to preliminary hearings. *See id.* at 10. The Court reasoned that if a particular proceeding passed the "tests of experience and logic," that is, if the proceeding has historically been open to the public, and if "public access plays a significant positive role in the functioning of the particular process," a "qualified First Amendment right of public access attaches." *Id.* at 8-9.

This qualified right of access can only be overcome "'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 9 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press Enterprise I*")).

2.2     Common Law Right of Access to Judicial Records

The common law right to inspect and copy judicial records predates the Constitution and was formally recognized in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). It is rooted in many of the same principles that form the basis of the First Amendment right, including the need for accountability of the otherwise independent judiciary, the need of the public to have confidence in the effective administration of justice, and the need for civic debate and behavior to be informed. *United States v. Blagojevich*, 612 F.3d 558, 559-60 (7th Cir. 2010) (citing *United States v. Criden*, 648 F.2d 814, 820-21 (3d Cir. 1981); *United States v. Amodeo*, 71 F.3d 1044, 1048

Case 2:15-cr-00116-JPS   Filed 03/10/16   Page 4 of 21   Document 79

(2d Cir. 1995)). A qualified right of access attaches automatically to all judicial records, without a showing of any particularized need. *See Nixon*, 435 U.S. at 597-98. What constitutes a "judicial record" hinges on "whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001).

Notwithstanding the "automatic" nature of this right of access, it is not absolute. This is so because "[e]very court has supervisory power over its own records and files," and access to records can be properly denied "where court files might have become a vehicle for improper purposes"—for example, "to gratify private spite or promote public scandal." *Nixon*, 435 U.S. at 603 (internal quotes and citations omitted). *Nixon* recognized that, while a comprehensive definition of the common law right is unavailable, it is universally accepted that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 598-99.

3.      DISCUSSION

The Journal Sentinel initially sought to intervene in this case to object to the sealing of the courtroom during a portion of Mr. Sonin's hearing. (Transcript at 8, Docket #69-1). After further briefing, the Journal Sentinel now requests the following: (1) for the Court to allow it to formally intervene in this matter; (2) that the entirety of Mr. Sonin's and Ms. Sonina's sentencing hearings be open to the public; and (3) that the Court unseal certain documents related to the sentencing hearings. (Journal Sentinel's Opening Br. at 5-9, Docket #69).

### 3.1 Journal Sentinel's Motion to Intervene

Before delving into the substance of the Journal Sentinel's arguments, the Court will briefly address its decision to allow the Journal Sentinel to intervene in this case. The Federal Rules of Criminal Procedure lack a counterpart to Federal Rule of Civil Procedure 24, which expressly allows intervention. However, courts have permitted intervention in criminal proceedings when the potential intervenor has a legitimate interest in the outcome and cannot protect that interest without becoming a party. *See, e.g., Blagojevich,* 612 F.3d at 559-60 (allowing intervention in a criminal prosecution and collecting other cases on the subject); *see also* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); *Cf. United States v. Rollins*, 607 F.3d 500 (7th Cir. 2010) (discussing opinions that allow motions for reconsideration in criminal cases, despite the absence of any provision in the Rules of Criminal Procedure).

Because the right of access to judicial records and proceedings "must be balanced against competing values," "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion from the proceedings or access to documents." *In re Associated Press*, 162 F.3d 503, 508 (7th Cir. 1998) (internal quotation omitted). Here, the Court finds that Mr. Vielmetti, together with the Journal Sentinel, have a legitimate interest in whether a portion of a court hearing or certain related records should or should not be available to the public. As such, the Court requested further briefing on the issue, and will now formally grant the Journal Sentinel's request to intervene in this case. (Docket #69 at 1 n.1). In light of this procedural determination, the Court now turns to the merits of the Journal Sentinel's motion.

### 3.2 Journal Sentinel's Motion to Access Sentencing Hearing

The Journal Sentinel requests that the complete sentencing hearings for Mr. Sonin and Ms. Sonina be entirely open to the public. The defendants recognize that the majority of the sentencing hearings must be open to the public; however, the defendants have specifically requested that those portions of their respective sentencing hearings which address whether they cooperated with the government, and, if so, to what extent, be closed to the public. (*See* Docket #76 at 2) (referencing "cooperation paragraph" contained in the plea agreements).

As discussed above, both the First Amendment and the common law may provide the right of public access. As discussed in detail below, the Court finds that neither the First Amendment nor the common law provide the Journal Sentinel with unlimited access to these sentencing hearings, and the Court will, therefore, permit the defendants to proceed in a closed courtroom setting which will be limited solely to matters related to the subject of "cooperation."

Before beginning its analysis, the Court recognizes that Mr. Sonin and Ms. Sonina took different approaches to reach the same conclusion—that portions of the sentencing hearings should be sealed. And, in response, the Journal Sentinel thus makes separate arguments as to each defendant in its reply. Notably, Mr. Sonin appears to concede that the First Amendment right of access attached here, whereas Ms. Sonina avers there is no First Amendment attachment as to this portion of the hearing. (*Compare* Docket #74 at 5 *with* Docket #76 at 6). This approach is certainly not a distinction without a difference. The Court, however, will perform the same analysis for each defendant because the issues presented to the Court are identical in substance.

Case 2:15-cr-00116-JPS    Filed 03/10/16    Page 7 of 21    Document 79

And, the issues presented here are a matter of first impression in this branch of the Court, and are of great importance to not only this case, but also to the future of sealed hearings in related proceedings. As such, the Court finds it more useful to focus less on the individual defendant's specific arguments and instead looks to the issues in a broader context.

### 3.2.1    First Amendment Protection of Sentencing Hearing

As noted above, the Supreme Court's test to determine whether the First Amendment provides access to a judicial proceeding involves a two-step test. Specifically, the Court is presented with two questions: (1) does a First Amendment protection attach to the proceeding at issue; and (2) if First Amendment protection does attach, may the Court nonetheless seal the requested portion of the hearings in the interest of higher values?

#### 3.2.1.1  Does the First Amendment Attach?

In addressing the first question, the Seventh Circuit has held that First Amendment protections attach to sentencing hearings and, more specifically, attaches to portions of a sentencing hearing that involve a defendant's motion for downward departure pursuant to U.S.S.G. 5K.1.1. *See United States v. Eppinger,* 49 F.3d 1244, 1250-51 (7th Cir. 1995). In *Eppinger,* the defendant requested an *in camera* hearing to present evidence of how she became involved in drug trafficking in support of her request for downward departure. *Id.* at 1248. Following the lower court's denial of the request for an *in camera* hearing, the defendant chose not to testify in open court, and later appealed her sentence partially based on the lower court's refusal to seal the hearing. *Id.*

On appeal, the Seventh Circuit held that the First Amendment attached to the portion of the sentencing hearing discussing downward departure. *Id.* at 1253. The court reasoned that the "'public has a strong First Amendment claim to access [ ] evidence admitted in a public sentencing hearing.'" *See id.* at 1253 (quoting *United States v. Carpentier,* 526 F. Supp. 292, 294-95 (E.D.N.Y. 1981). The court further explained that the "public must have the opportunity to observe and criticize the judiciary in the operation of its duties. In sentencing, it is the distinct province of the court to determine what constitutes [a] proper sentence." *Id.* (quoting *Carpentier,* 526 F. Supp. at 595).

Ms. Sonina acknowledges that precedent establishes that sentencing hearings are traditionally held in public. (Docket #76 at 7) (citing *United States v. Alcantara,* 396 F.3d 189, 197 n.7 (2nd Cir. 2005) and *Eppinger,* 49 F.3d at 1252)). But, Ms. Sonina goes on to argue that the "small portion of [the] hearing where her potential cooperation would be discussed" should nonetheless not receive First Amendment protection. (Docket #76 at 7).

The Seventh Circuit's holding in *Eppinger,* however, dictates the opposite. As discussed above, *Eppinger* addressed nearly the exact issue before the Court today—whether a First Amendment right of access attached to a portion of a sentencing hearing that involved the defendant's

cooperation with authorities.[4] Given this constraint, the Court is obliged to find that a qualified First Amendment right attaches to the portion of the sentencing hearing that the defendants seek to seal in this case.[5] Given this finding, the Court turns to the next question of whether the defendants can overcome the First Amendment presumption of disclosure.

---

[4]Ms. Sonina takes issue with the *Eppinger* case because it "assum[ed] that [a] qualified First Amendment right of access applies to sentencing; not discussing either tradition or logic prong." (Ms. Sonina Opp. at 7, Docket #76). This point is well taken, and the Court recognizes that the *Eppinger* case woefully failed to perform any analysis as to each prong of the "history" and "logic" test laid out by the Supreme Court in *Press-Enter II.* The *Eppinger* court did, however, cite to the correct test and recognize that the First Amendment attaches to "proceedings and documents which have 'historically been open to the public' and where disclosure would serve a significant role in the functioning of the process in question." 49 F.3d at 1253 (citations omitted).

Additionally, *Eppinger* provides no guidance as to whether the Court should look at this issue broadly—whether the First Amendment right of access must attach to all portions of sentencing proceedings—or whether the Court may separate the issue to ask whether the First Amendment right attaches to a 5K hearing where cooperation with the government is discussed. If presented with that question, without the existence of *Eppinger,* this Court might well resolve the question differently.

To be sure, the court's reasoning in *Eppinger* is far from crystal clear; indeed, if this Court were to perform a more in-depth analysis, with little doubt the result would be different. Notably, the Court finds Ms. Sonina's arguments likening the proceeding here to a grand jury to be persuasive. The topics discussed in reference to cooperation are similar to those found in a grand jury proceeding, which are traditionally sealed proceedings, *see Press-Enter. II,* 478 U.S. at 10, and, logically speaking, it makes sense to seal hearings where pending criminal investigations may be discussed. Nonetheless, the conclusion in *Eppinger* was clear—that the First Amendment attached to the portion of a sentencing hearing regarding cooperation with the government—and the Court is, therefore, bound by that holding.

[5]The Court notes that this determination—whether or not the First Amendment attaches—ultimately has no effect on the outcome in this case because the First Amendment right is overridden by competing interests, as discussed more thoroughly below.

### 3.2.1.2 First Amendment Application

The First Amendment right of access is not absolute. As the United States Supreme Court has recognized, it "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. Once the qualified First Amendment right attaches, that proceeding or document "cannot be closed unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II,* 478 U.S. at 13-14 (internal quotation marks omitted).

Initially, the Court in *Waller* placed the burden upon the party seeking closure of a hearing to demonstrate two things: (1) an overriding interest likely to be prejudiced by an open courtroom; and (2) that the closure sought is no broader than is necessary to protect that interest. 467 U.S. 39, 48 (1984).[6] The Seventh Circuit has expanded on *Waller*, adding two additional prongs: (3) alternatives to closure must be considered by the trial court; and (4) the trial court must make findings sufficient to support the closure. *Walton v.*

---

[6]The Court notes that both *Waller* and *Walton*, which relied upon the Supreme Court's reasoning in *Waller,* involved the Sixth Amendment right of the accused to a fair trial. The Court in *Waller,* however, applied First Amendment precedent, acknowledged the distinction, and found that the Sixth Amendment right "is no less protective of a public trial than the implicit First Amendment right of the press and public." 467 U.S. at 46. As such, the tests laid out in *Waller* and *Walton* are applicable here under a First Amendment analysis. *See United States v. Doe,* 63 F.3d 121, 128 (2d Cir. 1995) (finding that "[t]he same test applies whether a closure motion is made by the government over the defendant's Sixth Amendment objection or made by the defendant over the First Amendment objection of the government or press").

*Briley*, 361 F.3d 431, 433 (7th Cir. 2004) (citing *Waller*, 467 U.S. at 48).[7] In applying this test, courts have held that "'[a]ny doubts must be resolved in favor of disclosure.'" *Eppinger,* 49 F.3d at 1253 (quoting *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994).

Here, the Court has no doubt that the requested portion of the sentencing hearing should be sealed. The Journal Sentinel's First Amendment right to access the hearings must yield in this case to protect both the defendants' privacy interests as well as the government's interest in the disclosure of sensitive information. *See Waller*, 467 U.S. at 45.

As to the first prong, the Court finds that both the defendants and the government would be prejudiced by keeping the cooperation portion of the sentencing hearing open. Currently, the public record shows that both defendants signed a plea agreement requiring them to cooperate with the government. (Docket #39 ¶ 21, #40 ¶ 21). What is not known, however, is whether they did in fact cooperate, and more still, to what extent. The defendants participated in an extensive and sophisticated scheme involving mail fraud and identity theft. Many of the participants in this scheme are operating abroad and have not yet been apprehended. (Docket #76 at 10). The Court is mindful that the defendants have produced no concrete evidence of specific threats to either them or their family as a result of potential cooperation.

However, courts have found that the problem of retaliatory acts is "especially acute in the context of criminal organizations" and, therefore, "it might be within a district court's discretion to grant closure without evidence of a direct threat or other evidence corroborating a defendant's subjective

---

[7]Prior to *Walton,* the Second Circuit adopted the same four-prong test in *United States v. Doe,* 63 F.3d 121, 128 (2d Cir. 1995).

fears." *United States v. Doe,* 63 F.3d 121, 130 (2d Cir. 1995); *see also United States v. De Los Santos*, 810 F.2d 1326, 1334 (5th Cir.), *cert. denied*, 484 U.S. 978 (1987); *United States v. Scarpelli*, 713 F. Supp. 1144, 1145-46 n.2 (N.D. Ill. 1989) (closing a pretrial suppression hearing to protect the defendant from "Godfather-style retribution"). While there is certainly nothing in the record to suggest a "Godfather-style retribution" here, given the complex nature of the defendants' criminal organization scheme, and the fact that many international participants have yet to be apprehended, the Court is satisfied that the defendants would be prejudiced by a hearing open to the public with respect to matters involving cooperation with the government.

Further, the Court finds that the government would also be prejudiced here by the "disclosure of sensitive information" regarding ongoing investigations. *See Waller,* 467 U.S. at 45. In *Eppinger,* the district court denied the defendant's request for an *in camera* hearing to testify to past threats that were already part of the record, however, the district court expressly provided that it would have permitted a sealed hearing to discuss pending investigations. 49 F.3d at 1248. Although there are minimal concrete facts on the record as to the exact status of the government's pending investigation as to other participants in the fraud scheme, the Court is satisfied at this juncture that disclosure could jeopardize ongoing investigations. If public, such disclosures would provide the unintended consequence of providing potential targets with notice and time to flee, and even endanger the safety of cooperating witnesses. Further, public disclosure may harm the reputations of third-party individuals who ultimately are never charged with criminal wrongdoing in ongoing uncompleted investigations.

In addressing the next prong, the Court finds that sealing only the portion of the sentencing hearings related to cooperation is narrowly tailored to protect the interests of the parties. The vast majority of the defendants' sentencing hearings will be open to the public; the defendants seek to close only a small portion of the hearing to discuss only one aspect in the Court's sentencing determination. Following the closed portion of the hearings, the Court will sentence the defendants in open court and provide detailed reasons to support each sentence. Further, in the event that the substance of the sealed portions of the hearings contain no information that would prejudice either the defendants or the government, the Court may revisit its decision and unseal the transcript of the hearing to allow for public access. As such, sealing a small portion of the hearings is narrowly tailored to protect the interests of the defendants and the government.

Finally, as to the third prong, having considered various options, the Court sees no feasible alternative to sealing this portion of the hearings.[8] One possible alternative, which neither party suggests, is that the Court rely solely on the parties' sealed submissions in ruling on the government's motion, and thus dispel the need to discuss any details in open court. This alternative is not practicable, however, for two reasons: (1) if the Court rules upon the government's motion and were to grant it, even without any

---

[8]The Court notes that the fourth prong—that the court make findings on the record to support the closure—is incorporated in the discussion of the first three prongs. *See Walton,* 361 F.3d at 433.

Case 2:15-cr-00116-JPS   Filed 03/10/16   Page 14 of 21   Document 79

details, any assumption of cooperation could be strengthened;[9] and (2) the Court recognizes an important distinction between written and in-court submissions. Indeed, the Court regularly receives sentencing memoranda and letters that fully address all the issues related to a sentencing hearing, yet, nearly every instance in this Court involves some form of oral presentation during the sentencing hearing, whether it be from the defense attorney, defendant, their families and friends, or, more commonly, a combination of all three. It is the defendant's right of allocution under Federal Criminal Rule of Procedure 32 to have his or her day to speak in Court during sentencing, and that is a sacrosanct aspect of criminal

---

[9]The Court fully appreciates the fact that there is an elephant in the room—that is the defendants' request to seal this portion of the hearing, in and of itself, suggests cooperation. Indeed, any time a portion of a criminal docket is sealed, there can be an assumption of cooperation with the government. A study conducted by the Federal Judicial Center into remote public access to criminal court files in eleven pilot districts found that most practitioners believed that "a sealed document or a sealed hearing prior to sentencing may be evidence of cooperation by the defendant." David Rauma, Fed. Judicial Ctr., *Remote Public Access to Electronic Criminal Case Records: A Report on a Pilot Project in Eleven Federal Courts* 26 (2003), http://www.fjc.gov/public/pdf.nsf/lookup/remotepa.pdf/$file/remotepa.pdf; *see also* Caren Myers Morrison, Privacy, Accountability, and the Cooperating Defendant: Towards A New Role for Internet Access to Court Records, 62 Vand. L. Rev. 921, 939-41 (2009) ("[D]ocket sheet information can be read for markers of cooperation, such as sealed documents and proceedings around the time of a plea or sentence, an unusually long delay between a plea and sentence, or missing document numbers, all of which are strongly suggestive of cooperation.")

However, the mere fact that a sealed hearing or document may *possibly* give the impression that a defendant cooperated is not enough to alter the Court's determination. A defendant, or at least his or her defense attorney, is likely to be aware of the implications of a sealed hearing, yet they continue to ask for sealed hearings nonetheless. Further, an assumption of cooperation is not the same thing as a public transcript that openly states, for example, "the defendant's cooperation with the government led to the conviction of Mr. X." In other words, sealing has the benefit of plausible deniability in contrast to an open statement revealing the exact nature of the cooperation.

proceedings that allows a defendant to look the judge in the eye and know that his or her words are actually heard. *See* Fed. R. Crim. P. 32(4)(A) (requiring the court to "permit the defendant to speak or present *any information* to mitigate the sentence") (emphasis added). In light of these reasons, the Court finds no feasible alternative to sealing this portion of the defendants' sentencing hearings.

In sum, the Court finds that the Journal Sentinel's qualified First Amendment right of access to this portion of the sentencing hearing is overridden by the interests of the defendants and the government. No alternatives exist to sealing this portion of the hearings, and the request is narrowly tailored to protect the interests of the parties. Accordingly, the Court will allow the defendants to seal the portions of sentencing related to cooperation, and will deny the Journal Sentinel's motion to access the entire hearings.

### 3.2.2   Common Law Right of Access to Sentencing Hearing

The Court will briefly address whether the common law right of access provides the Journal Sentinel with a right to unseal the entire sentencing hearings.[10] As discussed above, the common law right of access has historically been interpreted as a right to judicial *records*, which is not the same as an in-court proceeding. *See Corbitt,* 879 F.2d 224, 228 (1989). The Court nonetheless finds it important to perform the analysis with respect to whether the transcript of the sealed portion of the sentencing hearings should be made available to the public.

---

[10]The Journal Sentinel does not make an argument regarding a common law right of access to the hearings themselves, however, the defendants argue against the point. The Court will address the issue to provide as thorough analysis as possible.

The Court finds that the common law does not provide a right of access to the portion of the sentencing hearings regarding cooperation.[11] The common law right is a "flexible concept," and the Court has discretion to keep documents sealed with a "'sensitive appreciation of the circumstances that led to…[the] production [of the particular document in question].'" *Corbitt,* 879 F.2d at 228 (quoting *Nixon,* 435 U.S. at 598). Further, the common law presumption of access "should not apply to materials properly submitted to the court under seal." *Id.* If properly submitted under seal, the third-party seeking access must make a "substantial, and specific, showing of need for disclosure before a district court may allow public inspection of [the document]." *Id.* at 238. Notably, in *Corbitt,* the Seventh Circuit rejected the public's generalized interest in *"every* criminal case (including those involving public officials), to evaluate the court's decision." *Id.* at 240 (emphasis in original).

Here, the Court will exercise its discretion to keep the cooperation portion of the sentencing hearings and the transcripts of that portion sealed. As discussed above, the Court finds valid reasons to seal portions of the hearings that override the Journal Sentinel's First Amendment right of access. Because the hearings will be properly sealed, the Journal Sentinel carries the burden to show a need for access to the hearings, which it has failed to carry. Similar to *Corbitt,* the Journal Sentinel has failed to show a specific need for access to the hearings aside from a generalized interest in the outcomes of criminal cases. (Journal Sentinel's Reply at 5-6, Docket #78) ("[T]his case has garnered public attention and concerns an issue of great public interest—fraud on the government."). The Court recognizes that the public

---

[11]The Court reiterates that it may reconsider its decision to seal the hearings in the event that no prejudicial information arises.

Case 2:15-cr-00116-JPS   Filed 03/10/16   Page 17 of 21   Document 79

may certainly have an interest in the outcome of this case; however, this is not enough to show a specific need to open the hearings. *See Corbitt* at 226 (finding general public interest in a criminal trial of the former police chief, who was indicted for extortion and racketeering, insufficient as a showing of specific need).[12] The Journal Sentinel fails to meet its burden to show a need for access to the entire sentencing hearings.

Accordingly, the Court finds that the common law right of access does not permit access to the cooperation portion of the sentencing hearings.

### 3.3    Journal Sentinel's Motion to Unseal Documents

As a separate issue, the Journal Sentinel seeks to unseal certain documents in this case related to sentencing.[13] Specifically, the Journal Sentinel seeks to unseal: (1) Mr. Sonin's "Sealed Document" at Docket #53; (2) Mr. Sonin's Revised Presentencing Report ("PSR") at Docket #57; (3) Mr. Sonin's Sentencing Recommendation at Docket #58; (4) Ms. Sonina's Release Status Report at Docket #48; and (5) Ms. Sonina's "Sealed Document" at Docket #60. (Journal Sentinel's Opening Br. at 4-5, Docket #69).

---

[12]In *Corbitt,* the court distinguished a Ninth Circuit case, *United States v. Schlette,* 842 F.2d 1574 (9th Cir. 1988), which held the common law provided a right of access to a PSR. *Id.* at 1580. In *Schlette,* a convicted defendant who had been released on probation by a federal court murdered an attorney who had prosecuted the defendant for a prior offense. *Corbitt,* 879 F.2d at 239. The deceased attorney's estate sought access to the PSR in addition to the press seeking disclosure of the report. *Id.* at 240. The *Corbitt* court recognized that under those facts, the public might have had a compelling need to learn the factors that led to the court's decision to release the individual who murdered the attorney. *Id.* The court explicitly contrasted this need with the "generalized public interest" in every case.

[13]The Seventh Circuit has expressly drawn a difference between the press's right of access to documents submitted for use in a hearing and the right to attend the hearing itself. *Corbitt,* 879 F.2d at 229 (citing *Dorfman,* 690 F.2d at 1234 and *United States v. Smith,* 776 F.2d 1104, 1111-12 (3d Cir. 1985)).

The Journal Sentinel does not make separate arguments as to each document, and its discussion almost entirely revolves around disclosure of Mr. Sonin's PSR. (*See* Journal Sentinel's Opening Br. at 5, Docket #69) (discussing presumption against disclosing PSR). In doing so, the Journal Sentinel does not appear to argue under the First Amendment. Instead, it argues it can overcome the presumption against disclosing the PSR by showing a "'compelling, particularized need.'" (Journal Sentinel's Opening Br. at 5, Docket #69) (quoting *Corbitt*, 879 F.2d at 239 (discussing standard for common law right of access to PSR)).[14]

As discussed above, the common law presumption of access to documents does not apply to "materials properly submitted to the court under seal." *Corbitt,* 879 F.2d at 239. Here, all five documents that the Journal Sentinel requests were properly submitted under seal, and thus the burden shifts to the Journal Sentinel to show a "compelling, particularized need for disclosure" as to each document. *Id.*

---

[14]The Seventh Circuit in *Corbitt* expressly held that there is no First Amendment right of access to PSRs. 879 F.2d at 237. PSRs may contain highly sensitive information: creating the PSR "is a process whereby the defendant, and others with knowledge of the defendant, engage in a critical evaluation of the defendant's entire persona: his or her family relationships, religious and ethical views, past proven or suspected criminal activity, emotional and sexual attitudes, and a wide range of other matters." *Id.* at 237. The court likened the PSR to be "more closely akin in degree of intimacy to psychiatric or spiritual counseling than to the public, adversarial cast of the trial of the guilt phase of a criminal proceeding." *Id.*

*Corbitt* does not, however, discuss any other sealed documents related to sentencing, such as the sentencing recommendation, and is, therefore, not necessarily outcome determinative as to whether there is a First Amendment right of access to all the other requested documents. Because the Journal Sentinel fails to make any First Amendment argument as to the other documents, however, the argument is waived.

The Court need not dwell on this subject because it has thoroughly explained above how the Journal Sentinel offers no particularized need for disclosure (*see infra* 3.2.2.); the generalized public interest in the outcome of criminal proceedings is insufficient to meet this standard. *See Corbitt,* 879 F.2d at 239. Here, the argument is even stronger because the Journal Sentinel lumps its argument as to all five requested documents together, and completely fails to explain with any particularity why it needs access to each document.

Finally, the Court rejects the Journal Sentinel's argument that disclosure of the PSR is necessary because the Court stated it will rely on the facts of the PSR in determining the ultimate sentence. (Journal Sentinel's Opening Br. at 5, Docket #69) (citing Transcript at 3:25-4:7, Docket #69-1). While this is certainly true, the Court relies on the facts in the PSRs in *every* sentencing hearing and, therefore, this argument is insufficient to show a particularized need as to why disclosure is necessary in this case. Thus, the Journal Sentinel has failed to meet its burden, and the Court will deny its request to unseal documents related to sentencing.

4. CONCLUSION

In sum, the Court finds that the Journal Sentinel is not entitled to access the entire sentencing hearings of the defendants. Although the Court does find a qualified First Amendment right of access attaches to the sentencing hearings, that right must yield to protect both the defendants' privacy interests as well as the government's interest in the disclosure of sensitive information. As such, the Court will permit a limited portion of the sentencing hearings to be sealed. The Court reiterates that, in the event the sealed portions of the hearings reveal no information that would prejudice

the parties, the Court may revisit its decision and unseal the transcripts of the proceedings.

Finally, the Court denies the Journal Sentinel's request to unseal documents related to sentencings because the Journal Sentinel fails to show any particularized need for disclosure.

Accordingly,

IT IS ORDERED that the Journal Sentinel's motion to allow public access to sentencing hearings and to unseal certain documents (Docket #69) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 10th day of March, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge